## OSGOOD vs. BRADLEY.

The *Stat.* 1821, *ch.* 135, did not dissolve territorial parishes, but left them as they stood before it was enacted.

Therefore the sons of the members of such parishes, on coming of age and continuing to reside within the limits of the parish, become *ipso facto* members of the same.

So also persons who come to reside within the limits of a territorial parish, and do not belong to any other religious society, do thereby become members of the parish within which they come to reside.

It it no longer necessary, in order to entitle a man to vote in parish affairs, that he should have been assessed in the last parish tax; that part of *Stat.* 1786, *ch.* 10, being virtually repealed by *Stat.* 1821, *ch.* 135, *sec.* 3. But the other provisions of *Stat.* 1786, *ch.* 10, so far as they are not inconsistent with our statutes of 1821, *ch.* 114, and 135, are still in force in this State.

An action against the moderator of a parish meeting, for refusing the plaintiff's vote, is maintainable without proof of malice or intent to oppress.

THIS was an action of the case against the defendant for refusing the vote of the plaintiff at a meeting of the first parish in *Fryeburg*, *March* 16, 1829, of which the defendant was moderator. The principal question was whether the plaintiff was a member of the parish, entitled to vote.

It appeared that the plaintiff's father was a member of the parish, and died previous to the passing of the statute of 1821 concerning parishes;—that his mother continued afterwards to be a member of the same, paying taxes, and contributing liberally to its funds;—that the plaintiff was born, and has always resided, within the territorial limits of the first parish;—that he became of age *June* 16, 1827;—that he was possessed of property to the amount of several thousand dollars, liable to assessment for parish purposes;—that he owned and usually occupied pews in the meeting house in which the members of the first parish usually assembled;—but that he had never been taxed in the parish; there having been no tax assessed since he came of age; and the parish having a productive fund of upwards of eight thousand dollars. It was admitted that a poll-parish existed in *Fryeburg*, at the time of the meeting in question.

Upon this evidence the defendant contended that as the plaintiff was not of age at the time of the passing of the parish-act of 1821, and had not since been accepted as a member at any legal meeting of the parish, he was not a member of the same. But this point was overruled by *Parris J.* who presided at the trial. The defendant further insisted that if the plaintiff were a member, yet not having been assessed in the last parish tax, he had no right to vote. But this also was overruled. He further contended that the plaintiff was not entitled to recover damages, unless he could prove that his vote was rejected with an intent to oppress, or deprive him of his rights. This also the judge ruled against the defendant; and a verdict was taken for the plaintiff, subject to the opinion of the court upon the points raised at the trial.

*Greenleaf* and *Fessenden* argued for the defendant, that the constitution of Maine, and the act concerning parishes, had essentially altered the principle on which parish membership was founded, by changing its basis from residence to contract. In Massachusetts, the consent of the individual was not necessary. The law made him, *de facto*, a member of the territorial parish within which he resided. He could not belong to no parish. It was made the duty of the legislature to enforce public worship, and to compel every citizen to contribute somewhere to its support. And all the decisions in that Commonwealth are founded upon these principles of its constitution and laws. But in Maine all parochial rights and obligations are made to depend on contract; on the consent of the parish, on the one hand, or of the individual, on the other. The citizen may contribute to the support of public worship, or not, at his pleasure. He may belong to any parish that will receive him, or to none at all. By *Stat.* 1821, *ch.* 135, *sec.* 8, no man can be classed in any parish without his own consent. Neither is any parish compelled to receive members against its will. The statute was designed to change the mode of becoming members; and this, not only in the case of a removal from one parish to another, but also of original membership.

The act of becoming a parishioner being thus a matter of mutual contract and obligation between the individual and the parish, it is

obvious that no minor can acquire that character ; because general-ly he is incapable of making a contract, and this case is not within any exception to the rule. The plaintiff, therefore, being a minor when the statute of 1821 was enacted, and not having been admit-ted a member of the parish at any meeting since he came of age, had never gained a right to vote.

That this statute has introduced a change in the principle of par-ish membership, is farther evident from the case of *Dall v. Kimball*, 6 *Greenl.* 171, in which it is settled that the lands of nonresident proprietors are not liable to parish assessments ; which they must have continued to be, if parishes continued to be territorial. If it has not, then the eighth section is absurd, in requiring the assent of the parish to admit perhaps the only class of men it could desire to receive ; while every profligate and atheist, residing within its lim-its, becomes, even against its will, *ipso facto* a member.

But if no such change of principle has been effected by this stat-ute, then it contains nothing " inconsistent" with the statute of 1786, *ch.* 10, which is therefore not repealed by implication, and remains in force, at least so far as the right to vote is concerned. And by this act, none have a right to vote in parish meetings, except those who were assessed in the last parish tax. As the plaintiff was not thus assessed, he had no right to vote, even if he were a parishioner. *Sparrow v. Wood*, 16 *Mass.* 457.

*Dana* and *D. Goodenow*, for the plaintiff, cited *Terrett v. Tay-lor*, 9 *Cranch*, 43, 52 ; *Brown v. Porter*, 10 *Mass.* 93 ; *Win-throp v. Winthrop*, 1 *Greenl.* 208 ; *Lincoln v. Hapgood*, 11 *Mass.* 350 ; *Lord v. Chamberlain*, 2 *Greenl.* 72.

This cause was argued at *May* term 1830 ; and at this term the opinion of the Court was delivered by

Mellen C. J. Our constitution has so carefully guarded the rights of conscience and secured to every man the privilege of wor-shipping God in the manner most acceptable to himself ; and our laws are also so liberal in their provisions for giving effect to the principles of the constitution, that every supposed attempt to de-

prive a citizen of any of his rights derived from these sources and protected by their sanctions, is met with a spirit and resolution which frequently causes an appeal to our judicial tribunals ; and from the very nature and subject of the controversy, there is generally a degree of peculiar feeling and excitement attending the prosecution of such causes. This circumstance should operate as an additional argument with the court, so to examine them in all their relations and consequences, as that the decision may not only be as correct as possible, but exhibit satisfactory proof that it reposes on principles which feeling and excitement are incapable of disturbing.

Our statute concerning parishes was passed on the 13th of *March*, 1821, the last section of which repealed all laws then in force inconsistent with its own provisions ; and the act of *June* 18, 1811, respecting public worship and religious freedom was also repealed by the general repealing act of *March* 21, 1821.

The provisions of our parish act are numerous and important, and some of them are new and peculiar ; but the decision of the present cause, we apprehend, must depend on the construction, more especially, of the eighth section, which is in these words, viz :

" *Sect.* 8. Be it further enacted, that any person may become a member of any parish or religious society now existing or hereafter to be created, by being accepted by the society of which he wishes to become a member, at a legal meeting of the same, and giving notice in writing to the clerk of the society which he is about to leave ; which notice and the time of receiving the same, it shall be the duty of such clerk to record. But every person ceasing to be a member of any parish or religious society, shall be liable to be taxed for all monies raised by such parish or society before his ceasing to be member thereof : Provided that no person shall be compelled to join or be classed with any parish or religious society without his or her consent, and when any person shall choose to withdraw from any parish or religious society, and shall leave a written notice thereof with the clerk of such society, he or she shall be no longer liable to pay any part of any future expenses which may be incurred by such society."

Osgood *v.* Bradley.

It is contended, as the basis of the defence, that the parish act abovementioned put an end to all territorial parishes ; or in other words, that, in connexion with the provisions of the constitution as to the subject, it produced that effect. This general proposition we cannot admit to be a correct one. We perceive no language in any part, authorising such a conclusion. It is a revision of the parish act passed in *June*, 1786 ; at which time there were only two poll parishes in existence, excepting those in a few large sea-port towns, where territorial parishes could not be formed ; and the new provisions contained in the parish act of 1821, were introduced in accommodation to existing circumstances, and in special reference to the interests of poll parishes. We have no occasion to question the extent of legislative power on the subject, but only to ascertain legislative meaning. We can never believe that such an extensive change on so important a subject, involving so many important interests and leading to such important consequences, should have been left as a subject of mere implication. A distinct and explicit declaration would have been made in the form of an express dissolution of all such incorporated territorial parishes. It cannot be believed that the legislature intended to derange, disperse and destroy all parish funds then belonging to such parishes, or leave them destitute of owners and protection ; especially when we consider they had been created and preserved by the commendable solicitude and care of a long succession of preceding legislatures of the parent commonwealth. Our opinion clearly is that the parish act of 1821, was not designed to dissolve any parishes or religious societies then existing, territorial or otherwise ; but to introduce certain provisions, additional to those then existing in *Massachusetts ;* some of which are more restrictive and some more liberal than those. This construction is in harmony with that which we have witnessed in practice ever since the act was passed.

It appears by the report that the plaintiff at the time he offered his vote, which the defendants refused to receive, was more than twenty one years of age ; and it is admitted that he was a minor of the age of sixteen or seventeen when the parish act was passed ; and it is neither proved nor pretended that he was ever accepted as

a member of said first parish at a legal meeting of the same. On these facts and the others in the report, was the plaintiff a legal voter at the meeting on the 16th of *March*, 1829 ? or, in other words, was he then a member of the first parish ? This may be an interesting question to him in many respects. It is the parish to which his parents belonged, and in which he has attended public worship before and since he became twenty one years old ; there a valuable estate, belonging to him, is situated, and he seems anxious to rank himself as a member of the parish. But if the question be interesting to the plaintiff for the reasons mentioned, it is of vast and extensive importance in respect to all who have arrived at the age of twenty one, being inhabitants of territorial parishes, or removed into such parishes, since the act of 1821 was passed ; and it is of importance too as to such parishes. In relation to poll parishes, every one knows whether he has legally become a member of any such.

The case of *Lord v. Chamberlain,* 2 *Greenl.* 67 furnishes us with a rule of decision in the present case, should it be found that our parish act was not intended to affect the legal rights of members or inhabitants of territorial parishes, (wishing to continue such,) as the counsel for the plaintiff has contended.

The counsel for the defendant contend that the 8th section has placed the whole subject of parochial connnexions on the ground of contract and consent ; that a minor, for that reason, cannot legally join himself to a parish and become a member of it ; and that a person of full age cannot become a member of a parish without its previous vote of acceptance. This argument is in perfect consistency with the construction they gave to the section we are considering, and, indeed, to the whole act, as amounting to an abolition of all territorial parishes. In their view, they necessarily consider the provisions of the 8th section as applying exclusively to poll parishes· The counsel for the plaintiff also contend that with some exceptions, such is the true construction of it ; that its provisions were designed more fully to give effect to the liberal principles of the constitution, and simplify the means of enjoying perfectly those privileges, which, under the government of Massachusetts were secured by

special acts, incorporating poll parishes, and afterwards by the act respecting religious freedom which was passed in 1811. We must now, with the best lights we can obtain, decide which of the foregoing views is the correct one. On this ground our opinion must rest, because we do not perceive any weight in the objection to the plaintiff's qualifications as a voter, provided he was then a member of the first parish. For though there is a provision in the parish act of Massachusetts of 1786, by which it is declared that none shall be considered as qualified voters, except those who pay in one tax, exclusive of the poll or polls, a sum equal to two thirds of a poll tax ; and though there is no explicit and express repeal of this provision, in terms, in our parish act, yet the language of the 3d section evidently introduces a new principle on this subject, by declaring that " the inhabitants of each parish or religious society may annually meet, and being so assembled may by written ballot, or otherwise, elect a clerk, two or more assesors, a collector, treasurer, and a standing committee or such other officers as may be deemed proper for the convenient management of their concerns." Any inhabitant, *twenty one years of age or upwards* is thus, by this act, constituted a qualified voter. The same idea is preserved in the act regulating town meetings and the choice of town officers, passed *March* 19, 1821, six days after the parish act was passed. It contains this proviso, viz. " Whenever the inhabitants of any town are legally assembled to act on any subject relating exclusively to parishes, no person, who is not a member of said parish and liable to be assessed for parochial charges, shall be permitted to vote in such meeting." Taxation is not required ; liability to taxation is sufficient.

We have already decided that the parish act of 1821 cannot be construed as having any effect upon the legal existence or character of territorial parishes. All such parishes were incorporated by acts of the legislature of Massachusetts ; and those acts have never been repealed. Parishes of that kind are not mentioned by that name in any part of our parish act, much less are they abolished by it. We have before intimated the objects of its new provisions. This circumstance affords one aid in the construction of the act.

The first section provides "that any persons, twenty one years of age or upwards, desirous of incorporating themselves into a parish or religious society, may apply to any justice of the peace," &c. This section can have no relation to any parishes except poll parishes. The second section defines the powers of parishes and religious societies. The third prescribes the mode of calling meetings. The fourth relates to the government of such meetings. The fifth directs the mode of calling meetings in special cases. The sixth gives them power to raise, assess and collect monies, and points out the mode of proceeding. The seventh relates to pew taxes. The eighth has been copied at large into this opinion. The ninth relates to the records of the parish. The tenth gives power to take and hold property in succession. And the eleventh repeals other laws inconsistent with its provisions. But the parish act of Massachusetts, of *June* 28, 1786, has not been repealed by the general repealing act of *March* 21, 1821. All its provisions, not inconsistent with our own parish act, and *ch.* 114 of our revised statutes, are now in force in this State ; some of which are important. The very language of the repealing section in our parish act shows that there was no intention of impairing or affecting any rights enjoyed or secured under the act of Massachusetts, any further than the new provisions of our own act extend. But an examination of it shows that the principal object in view was, as has been contended, to increase the facilities for enjoying religious freedom in respect to opinions and practice, to articles of faith, modes of worship and regulation of the concerns of churches and religious societies. By the act respecting public worship and religious freedom, passed in 1811, a person might, at his pleasure, withdraw from one parish and join himself to another, by performing certain conditions as to notice. But it was considered desireable and proper to extend the liberal principle one step farther, and permit a person to withdraw himself from one parish, and dissolve his pecuniary connexion with it, and still not be obliged to join any other society, or contribute any thing towards the expense of maintaining public worship any where. Another idea in support of the construction we are giving is this. The section contemplates the case of a person who joins a

parish or religious society, having previously withdrawn himself from another society ; for it provides that on joining a society, he shall give " notice in writing to the clerk of the society which he is about to leave ;" evidently implying that the object was to grant relief to persons desirous of changing their parochial relations for others more acceptable to them ; not of depriving inhabitants of territorial parishes of the privilege of continuing to worship where their parents worshipped with their families ; where they themselves may have their dwelling places and their property ; and where, on arriving at the age of twenty one, they would, without any act or declaration on their part, become members of such parish. As the act has a manifest reference to the accommodation of those whose religious opinions and feelings prompt them to seek the object of their desire in originating or in joining self-incorporated parishes or religious societies by virtue of the act, we perceive no sound reasons for extending the construction of it so as to embrace those whose opinions and feelings lead them to continue in the faith and worship of their fathers, and who seek no relief from burthens on their consciences or the pressure of taxation. The foregoing provision which we have just been noticing, is as applicable to a person leaving a society in one town and joining a poll parish in another town, as to a person leaving one parish and joining another in the same town.

There is one other view of the section in question. The language is, " any person may become a member of any parish, &c. by being accepted by the society of which," &c. It does not declare that to be the only mode ; nor in terms take away the mode of becoming a member of a territorial parish by moving into it, or living in it before and after the age of twenty one, according to our decision in *Lord v. Chamberlain.* But we do not wish to place the decision of the cause on this ground ; we prefer the broader one.

In former days each town generally composed one parish. Some larger towns contained two or more parishes, which, with very few exceptions are territorial parishes ; and commonly of the same denomination and religious opinions. Changes of opinion gradually appeared, and with these new denominations of christians, claiming

the right to enjoy those opinions and attend upon the instruction of their own selected teachers, and be relieved from expense towards maintaining those on whose ministrations they could not conscientiously attend. Though a minority, they claimed equal rights with the majority in this respect. This led to the incorporation of poll parishes ; and this produced, as to them, the desired effects. Contested questions in matters of doctrine served to multiply the numbers of such parishes and religious societies ; and most of the legislation on these subject has had immediate, and almost exclusive reference to such societies, and the protection of their privileges ; while the territorial parishes have remained generally as they were, in respect to their own rights and those of their members, though the number of their members has been reduced.

We apprehend that the practical construction of the parish act, so far as territorial parishes have been concerned, accords in substance with that which we have given in this opinion; and that as to them, the doctrine laid down in *Lord v. Chamberlain* has been considered as applying ; and that applications for admission and acceptance of new members, as minors arrived at the age of twenty-one, or as others moved into the parish, have seldom, if ever, been made or deemed necessary since the act in question was passed. Though this practical construction has not continued ten years, it has continued long enough to lay the foundation for disputes, and lead to unpleasant consequences, if all is founded in error and illegality.

The section in question declares that " no person shall be compelled to join or be classed with any parish or religious society without his or her consent." Here, exemption is granted, in the most express terms, from what was deemed an unreasonable subjection to the control of a majority, in a case where the mind ought to be free, and the man and his property at his own disposal. And why should those who do not wish for any such exemption, in consequence of any change of opinion, or mode, or place of worship, be deprived of the privilege of listening to religious instructions from a teacher whose doctrines and principles they believe and approve, and subjected to other inconveniences and privations, by mere implication ; or by any language which is not express and unequivocal ?

The instruction of the judge, that the action was maintainable without proof of malice or intention to oppress the plaintiff and deprive him of his rights, we consider as in accordance with approved decisions. Our opinion is that there must be

*Judgment on the verdict.*